Good morning, Your Honors. May it please the Court, Roman Storza for the Plaintiff's Appellants. I'd like to reserve four minutes for rebuttal. I would like to spend my time addressing the two major issues in this appeal. The first is the severability issue regarding the state regulation. The second being the free exercise claims. Let me get right into it. With respect to the Hawaii regulation, this Court has previously found that one factor, one element, one guideline of the Hawaii regulation governing the consideration of special permits by state planning commissions was an unconstitutional prior restraint. Counsel, let me get right to my concern about your argument on severability. It seems to me that the other criteria are completely unrelated to the one that is defective. For example, there's no unreasonable burden to provide sewers and roads. The land isn't suitable for the use and so forth. They're unrelated and they are relevant to the issuance or not of a special permit. And given that fact and the fact that Hawaii law presumes that there is severability, why should we hold otherwise? For two reasons, Your Honor, and those two reasons track the Hawaii standard for severability. First of all, while the provisions themselves very superficially are separate, the guidelines, I shouldn't say provisions, there's one provision here. The provision is subsection C. The state has said that these guidelines are established in determining an unusual and a reasonable use. You cannot take one of these guidelines out and say that the establishment of the guidelines then makes any sense at all. It is one factor that is integral to the entire provision, which says that planning commissions have to look at these guidelines. You remove one of the guidelines, they cannot look at the guidelines anymore. Well, that doesn't follow as a matter of logic. If you have six criteria and they are completely unrelated, you know, age, where you live, where you went to school, and you take one of them out, you can still consider all the others. I don't really understand the logic of your argument. You can't consider the whole picture. This is a special permit. This is a land use permit. Well, you consider the rest are remaining as the entire. You have five things to look at instead of six, but that doesn't mean you can't look at them in the totality of those five things. Well, to put it in a different way, let's say you have a crime. There are certain elements of the crime. One of the elements is found to be an unconstitutional prior restraint. Well, criminal law is a whole special thing. Again, it is making a decision about one issue, whether a special permit should be granted or not. I have not come across any authority anywhere suggesting that you can take such an analysis, remove one factor or guideline, and then the remainder can then just be applied, ignoring that one that was removed. The Nelson v. Miwa case, I believe, is completely on point here, decided by the Hawaii Supreme Court, which talked about retaining a professor at the university, said there are these different factors to look at. One of them was held to be unconstitutional, and the Supreme Court said that the whole must be thrown out because one of the factors was held to be unconstitutional. But it was the factor that, well, it was one of those non-subjective factors. It had to do with age, right? Age over 65 made you ineligible? Is that the Nelson case? No, it was that his services are needed by the university. No, but I mean it's the professor case. Right. Okay. And that there were other factors, such as whether he's more competent for the position than any other person available. And the court did not excise one factor that's been used in making the one decision, whether to retain the professor or not. It threw the entire thing out. There are no cases to the contrary. There are no cases that we've come across or that the state has come across that says that you can take one element out of a decision-making process and simply just apply the rest. The second reason is, I think, even the more important reason. The Hawaii standard says that it would be impossible to suppose that the legislator would have passed this regulation without this fundamentally important element. The test here is whether you're going to get a special permit to operate a use on a particular parcel of property. The element that's been held as unconstitutional is the effect on surrounding properties. To talk about a special permit without looking at the effect on surrounding properties is completely unreasonable. The way that the Hawaii Supreme Court has talked about it, the way that the legislature in amending these provisions has talked about local impacts. The Supreme Court talks about you cannot grant special permits unless you look at conditions imposed for the protection of neighbors to ameliorate the effects of the zoning change. We've cited these cases. In the Kauai Springs case, you have to consider factors such as, would it adversely affect the surrounding property? To take this part of the analysis out is, like I said, would be completely unreasonable. These Hawaii authorities have looked at, the Attorney General has looked at authorities, treatises, cases from other jurisdictions, where the analysis most fundamentally looks at the impacts on surrounding properties. So the question here is, would the Land Use Commission, would Hawaii rather have a special use permit standard that looks at unusual and reasonable uses, which is the standard that they apply at the state level, not at the county planning commission level. They do apply it. They have applied it. We've provided you with the Ho'omoana Foundation case, which is exactly what they did. They don't look at the five factors when you're at the state LUC, whether they would use that standard, which exists, or whether they would use the excised four-part standard, which doesn't look at the most important factor at all, the impact on surrounding properties. Counsel, can I have you move on to the substantial burdens claim, the Ray Lupa claims? Certainly, Your Honor. And I guess what I'm trying to figure out from your perspective is, the district court seems to have analyzed one of the factors, didn't analyze the other factors. What's your position on that? Are we talking about the substantial burden factors?  The district court focused, we believe that, first of all, the district court made the fundamental legal error of creating this distinction between religious and, quote, commercial activity. There is no such distinction. But, counsel, I know that you need to get to Judge Mendoza's question, but just taking a step back, the religious practices at issue are those that are listed on the permit application, correct? Yes. Okay, in 2012. So, is it permissible for the county to distinguish between those activities sought on the application and activities outside the application? Does that make sense to you? I guess let's say it said only we're applying to hold a prayer circle once a week, and then there is suddenly some other activity that pops up. So, is that a permissible distinction between things requested in the application and things not requested in the application? Well, the application requested a special permit to operate a church in Niagara. Right, but it specified weekly church services, sacred programs, et cetera. So, I know that you think that that definition encompasses everything that you want to do, but I just want theoretically to understand your position on inside or outside the application. I think that the planning commission would look at the entire record, which goes beyond the application and contained much back and forth between the applicant and the planning department going into excruciating detail with respect to how much they would be able to worship, how many services they could have, how many people would be allowed at these services, kept working them down, down, down to a very modest application, which did include the religious services. It included sacred events. It included yoga, which is important to the temple's religion, and so on. So, I wouldn't say that the constitutional rights of Spirit of Aloha Temple are dependent solely on the words written in the application, and I don't think the planning commission would agree with that either. I think the planning commission would take the entire record into account, including the back and forth. And I've taken you away from Judge Mendoza's question, for which I apologize. And if I remember Your Honor's question correctly, and I want to add one quick footnote here, which is the question of substantiality does not exist for the Spirit of Aloha Temple's free exercise claim. Because this is not a neutral law of general applicability, the Supreme Court has recently confirmed that you don't apply some sort of substantiality. You just look at whether religion is being burdened, and if so, whether the government is using the least restrictive means of achieving a compelling governmental interest. Now, with respect to the RLUIPA claim, of course, the substantiality question exists. And what the district court did here was it looked to other circuits and said, you have to prove that you had a, quote, reasonable expectation of receiving this permit in order to be able to state it. Did the district court require the plaintiffs to approve in the first instance whether or not they were substantially burdened? Did the district court require that? The district court declined to grant plaintiff summary judgment on this question because of its – well, first of all, because of the religious commercial issue, which was wrong as a matter of law. And second of all, because it grafted this standard from – I think it originated in the Fourth Circuit of this reasonable expectation. That's not the law of this circuit. This circuit has never required such a showing, and that's the other major legal error that it made when it denied summary judgment. I have a – I'm sorry. I was just going to ask – sorry. Go ahead. I have a fundamental question about the substantial burden issue and why that was sent to the jury. That seems erroneous to me. I would think that's a legal conclusion to be drawn. And that – you're absolutely right, Your Honor, and that is what we consistently argued to the district court. So if that's – if we were to hold that that was error, would we return the case or decide it in the first instance here? Because we would have that, I would think, at least in theory, have that option either way.  And the county – I understand the county is not here today to – but in its briefing it agreed that this court can engage in a de novo review, if I remember. That doesn't mean we have to, though. Correct. So that's my question. Is there any – I don't want to belabor this point, but there is absolutely no evidence in the record to suggest that, A, the temples and Frederick Koenig's religious beliefs are insincere. B, that – They concede that his beliefs are sincere. Your Honor, this is what we had dealt with over many years. The positions kept changing, but yes, at many times they did concede that. And the district court recognized that. So if it's conceded that they're sincere, then the next question is whether it's related. Correct? Whether the proposed activity is motivated by that religious belief. And, again, there is no evidence in the record to suggest that it isn't. And my question is, is there any evidence outside the record that would benefit from oral argument at the district court? Or is there – None, Your Honor. Do both sides agree that there's enough here for us to decide this? Well, one side at least. Your Honor, with respect to the question of whether the proposed activity was related to their religious beliefs, the county's 30B6 witness agreed that the proposed uses for the land were religious in nature. The county admitted this is at – this is in their own briefing. In this appeal stated, quote, the record demonstrates that plaintiffs engage in the practices and activities they claim are essential to their faith. They have agreed with that. They're just arguing that this is more commercial than anything. I think that's how I read their briefing. They're saying that, oh, this is more commercial. It's not religious. That's what their argument is. It's more narrow than that, Your Honor. They're saying that this one activity, the performance of weddings, which if you look at the state's own records, every single wedding in the form say that they're religious weddings, that because the temple receives donations for these weddings, it's a, quote, commercial activity and therefore is not protected by RELUPA, is not protected by the county. Well, what if it is a commercial activity? Let's just say for the sake of my question that it is commercial, that it isn't merely for upkeep of the church, but it's for personal profit or profit of the institution to go out and do other fun things with the money. What effect does that have on the analysis? And, Your Honor, if this was a completely different case where Mr. Honig and the temple were lying about their motivations, they were just trying to make a buck here, and it had nothing to do with their sincerely held religious beliefs, then the Supreme Court has said that you can look at the sincerity of the religious claimant. You can say, are they just making this up? Is this a prisoner saying that they have a religious belief that they need filet mignon for dinner? Yes, you can do that, but there's nothing in the record here to support that. Absolutely not. Okay, that was sort of a backdoor answer, but I take it that if it were a purely commercial and not religiously motivated activity, then the answer would be different. If it were a purely commercial activity and there was evidence to support that, then it would fall outside the ambit of the protections of religious beliefs. But you're saying also that it can be religious and commercial. Theoretically, it could – activity in the Hobby Lobby case, in the masterpiece – the bakery case. You had commercial activity, which the Supreme Court says still is protected. Those were RFRA cases, Counsel. RFRA cases, which has been called the sister statute to RLUBA. Right, but no, we haven't said that yet, have we? I don't believe so. Close. Same language, same standards, and we have First Amendment claims here, which, again, have been applied in the commercial context. But we would dispute that it's commercial in the first place. We'd also like to point out that the record, the undisputed – When you say we would dispute it's commercial in the first place, are you saying that it's not commercial at all or it's not primarily commercial? This is an interesting question, Your Honor. There is no such thing as a – the county has called these commercial weddings. That is not a category that exists in any law, in any state law, in any county law, in any regulation. They made this up. Every church – not every church. The record demonstrates, undisputably, that many churches on Maui County do exactly the same thing and that the county has not taken enforcement action against them. It is common for a church to receive a donation through the performance of a wedding, to hold services, to have receptions, to make their facilities available for these things. Again, this is in the record. It's undisputed. So there's no such thing as pretext in this context? There's no pretext here. There's no evidence of any pretext. The county says – I'm just saying in the analysis, have there been any cases where it's said, oh, that's just pretext for religion? There are cases where the sincerity of a claimant is questioned, but that's not what's happening here. The county isn't saying, we don't believe you. That's why it's confusing. Right. It's incredibly confusing and frustrating for the temple, Your Honor. The county has said, sure, you're religious, but because you're getting donations, you're also commercial, and therefore, you're not protected. That's the position we're facing. Do you want to reserve the balance of your time? Yes, Your Honor. Thank you very much. Sorry. Good morning, Your Honor. Siona Gulano on behalf of the state. As I indicated before, the state appears today simply to address appellant's first issue on appeal, which is whether Subsection C, Paragraph 2 is severable from the rest of the Rule 151595C of the Hawaii Administrative Rules. And as Judge Graber indicated, Hawaii courts have noted that there is a presumption of severability in the state. And when considering whether a provision of law is severable, the court is to consider whether the remaining portions, once the unconstitutional port is excised, whether the remaining portions are intelligible and enforceable, and whether they continue to carry out the intent of the enacting body. And Mr. Storrs was arguing Nelson. The Nelson case favors his client. What's your position? Your Honor, the Nelson case addresses severability in almost maybe two sentences, and it doesn't complete a real robust analysis of why it found that the provision was so intertwined as to be inseverable. However, if you take a look at what the provisions were, the way that the provision was put into practice, the university considered whether there were reasonable or qualified applicants and took that information to determine whether the applicant, who was 65 years or older, was personally needed. So the analysis of each part of Appendix G were so intertwined that to remove one would render the provision incomplete. And that's not the case here. As Judge Graber indicated, each of the five guidelines with Provision 2 excised stand on their own. The Hawaii Supreme Court in Neighborhood Board or Wai'anae Coast acknowledged that, and this court in its 2022 opinion acknowledged that as well, that the commissions could deny a special use permit on any one of the guidelines. And taking a look at the text, nothing in the text of the regulation indicates any one of the guidelines are more important or should be weighed or considered above any of the rest. So plaintiff's attempt to give a lot of weight to Paragraph 2 is misguided. And if we take a look at the essential intent of not only the special use permit but the Hawaii Administrative Rules, the remaining guidelines continue to further those intents. Special use permits are intended to provide landowners relief in exceptional situations where the use desire would not change the essential character of the district or not be inconsistent therewith. And then the regulations, the Land Use Commission rules, should be applied liberally so that it preserves, protects, and encourages the development of preservation of lands for uses which they are best suited while also considering the public health and the welfare of the people of the state of Hawaii. And the remaining provisions do that. And contrary to what plaintiffs contend, the commissions can still consider the effects of a proposed use on the surrounding properties, but they must simply consider them within the more specific remaining four guidelines as opposed to the now unconstitutional Paragraph 2 with the amorphous adverse effects. Therefore, the state requests that this court affirm the district court's finding that Paragraph 2 is severable from the remainder of the rule and affirm the grant of summary judgment on Count 5. If the court has no questions for the state, we would have succeeded the remainder of our time. Noted. Thank you. Thank you, Your Honor. We have, I think, about a minute to rebut on what Ms. Guadalano spoke about. Thank you, Your Honor. The question that's presented to the court here, and I'm going to look at the second part of the Hawaii Standard for Severability, is whether the government would have a standard that doesn't allow the planning commissions to look at local impacts, impacts on other properties at all, or whether it would use the existing standard in the statute, which is unusual and reasonable uses, which is the standard that they use at the state level itself, not at the county level. Because of the fundamental importance of impacts on surrounding properties, other properties, we believe that the answer to that question is a very clear no, that it would not prefer a standard where the county planning commissioners cannot look at impacts on surrounding properties. Thank you, Your Honor. Thank you. Thank you, Mr. Storrs, Ms. Guadalano, and I'll ask that in order to show Cosby issued to Mr. Bilberry, for him to respond as to why he was not present here today for the oral argument. The case of Spirit of Aloha versus County of Maui is now submitted. Thank you. Oh, yeah, I think if I hadn't already done this, the Spirit of Aloha Temple versus County of Maui on the costs is now submitted as well. Thank you very much. Appreciate your presence and your oral arguments. All rise.
judges: MURGUIA, GRABER, MENDOZA